# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> Plaintiff, <br> vs. <br> ROBERT COTA, Jr. (10) <br> Defendant. | CASE NO. 11CR4153 WQH <br><br> ORDER |

HAYES, Judge:

The matter before the Court is the motion to suppress wiretap evidence, or in the alternative, to request an evidentiary hearing filed by the Defendant Robert Cota, Jr. (ECF No. 290).

**BACKGROUND FACTS**

On September 15, 2011, the federal grand jury returned a one-count indictment charging twenty four defendants, including Cota, with conspiracy to distribute methamphetamine. The indictment alleged that the defendants "knowingly and intentionally conspired together and with each other and with other persons known and unknown to the grand jury to distribute 50 grams and more, to wit: approximately 2.87 kilograms (6.3 pounds) of methamphetamine (actual), a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 841(a) (1) and 846." (ECF No. 1 at 2).

The investigation in this case began in September 2010 targeting subjects involved in smuggling large amounts of methamphetamine into the United States from Mexico. During the course of the investigation, the Government sought and received authorization to conduct

electronic surveillance on a number of telephones used by the defendants and alleged co-conspirators. The initial application for an order authorizing the interception of wire communications was presented to the district judge in February 2011. Defendant Cota was intercepted between June 7, 2011 and September 25, 2011 pursuant to subsequent wiretap orders.

On June 6, 2011, a wiretap application was made by the Assistant United States Attorney to the Honorable Janis Sammartino, United States District Court Judge to intercept communications on three phone lines including TT#14 used by Defendant Garcia. Defendant Cota was not named in the June 6, 2011 affidavit as a target subject but was subsequently intercepted over TT#14.

On July 7, 2011, an order was signed by the Honorable Thomas Whelan, United States District Court Judge to intercept communications on phone TT#14 used by Defendant Garcia and phone TT#17 used by Defendant Cota.

On July 13, 2011, an order was signed by the Honorable Janis Sammartino, United States District Court Judge to intercept communications on phone TT#18 used by Defendant Julie Peterson.

On August 2, 2011, an order was signed by the Honorable Janis Sammartino, United States District Court Judge on a number of phone lines, including phone TT#17 used by Defendant Cota.

On August 30, 2011, an order was signed by the Honorable Janis Sammartino, United States District Court Judge to intercept communications on a number of phone lines, including TT#29 used by Defendant Cota.

The application for the wiretap orders at issue were supported by the Affidavit of Special Agent Jeffrey Grimming of the United States Department of Homeland Security and Immigration and Customs Enforcement.

**CONTENTIONS OF THE PARTIES**

Defendant contends that the electronic interceptions were unlawful on the grounds that 1) the applications for wiretap of the targeted phones lacked necessity, and 2) there is no

evidence that agents properly minimized the interceptions. The Government contends that each affidavit in support of the wiretap applications established necessity providing specific facts that detailed the progression of the investigation as a whole, as well as the success and limitations of traditional methods used during the investigation. The Government asserts the adequate minimization instructions were provided to the wiretap monitors and utilized in this case.

**ANALYSIS**

**1. Necessity**

18 U.S.C. § 2518(3)(c) provides, in relevant part, that a judge may approve a wiretap if he or she "determines on the basis of the facts submitted by the applicant that ... normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous...." 18 U.S.C. § 2518(3)(c). In order to obtain a wiretap, the application must provide "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). The purpose of this requirement is to "assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Kahn*, 415 U.S. 143, 153 n.12 (1974). The government must overcome the statutory presumption against this intrusive investigative method by proving necessity. *United States v. Rivera*, 527 F.3d 891, 897 (9th Cir. 2008); *United States v. Blackmon*, 273 F.3d 1204, 1207 (9th Cir. 2001).

The review of the court "includes an assessment of whether the affidavit attests that adequate investigative tactics were exhausted before the wiretap order was sought or that such methods reasonably appeared unlikely to succeed or too dangerous." *United States v. Gonzales*, 412 F.3d 1102, 1111 (9th Cir. 2005). The Court of Appeals has adopted a "common sense approach" in which the reviewing court uses a standard of reasonableness to evaluate the government's good faith effort to use alternative investigative means or its failure to do so because of danger or low probability of success. *Blackmon*, 273 F.3d at 1207. In *United States v. McGuire*, 307 F.3d 1192 (9th Cir. 2002), the Court of Appeals explained that

"conspiracies pose a greater threat to society than individual actions toward the same end" when considering the statutory requirement of necessity under Section 2518(1)(c). *Id*. at 1197. The Court of Appeals stated:

> Conspiracies pose other special dangers. Unlike individual criminal action, which comes to an end upon the capture of the criminal, collective criminal action has a life of its own. . . . Reflecting this concern, we have consistently upheld findings of necessity where the traditional investigative techniques lead only to apprehension and prosecution of the main conspirators, but not to apprehension and prosecution of . . . other satellite conspirators. Because the government has a duty to extirpate conspiracy beyond its duty to prevent the mere commission of specific substantive offenses, we conclude that the government is entitled to more leeway in its investigative methods when it pursues a conspiracy.

*Id.* at 1197-98. (quotations and citation omitted).

In this case, Defendant asserts that this investigation was conducted into a local methamphetamine organization and that the affidavits made an insufficient showing that normal investigative procedures would fail. Defendant asserts that the affidavits in support of the wiretap orders relied upon inherent limitations of traditional investigative techniques without a showing that the traditional methods had been tried and failed. Defendant contends that the June 7, 2011 affidavit was insufficient to establish necessity and that the subsequent July 7, July 13, August 2, and August 30 affidavits relied upon an unlawful June 7 affidavit and order. Defendant asserts that the July 7 affidavit described Defendant Cota as a "sub-distributor for [defendant] PETERSON" and fails to show that normal investigative procedures such as physical surveillance would not have been effective. Defendant further asserts that the affiant failed to inform the district judge in the June 7 and the July 7 affidavits in support of the wiretap applications that Defendant Zimmerman and Defendant Cota were on state parole and had "fourth waivers" which would have allowed agents access to their residences.

The Government contends that the affidavits in support of the wiretap orders complied with the requirements of Section 2518(1)(c). The Government asserts that each affidavit provided specific facts that detailed the progression of the investigation as a whole, as well as the successes and limitations of traditional methods used during the investigation. The Government asserts that the Defendant Cota was not identified at the time of the June 7 affidavit and the affiant could not have included information regarding Cota's fourth

amendment waiver in the June 7 affidavit. The Government further asserts that omission of Defendant's Cota's fourth-waiver status in the July 7 affidavit was not material because the June 7 affidavit and the July 7 affidavit discuss fourth amendment waiver searches of residences associated with Defendant Cota and explains to the issuing judge why this investigative method was not used in this case.

In this case, the affiant details the goals of the investigation in the June 7, 2011 affidavit. (ECF No. 497, Exhibit A). The agent explains that a task force has been investigating the smuggling of large amounts of methamphetamine into the United States from Mexico and has identified sources of supply connected to two rival cartels. The agent sets forth the previous wiretap applications and the target subjects and seeks an order to intercept telephones for three of the target subjects who are involved in the importation and distribution of methamphetamine. Defendant Cota is not identified as a target subject. The necessity section of the June 7 affidavit sets forth in detail the specific facts detailing the progression of the investigation and discussed the successes and limitations of specific methods used during the investigation. The agent states that the task force has gathered substantial information regarding the criminal activity of the target subjects but has been unable to accomplish the goals of the investigation, including identifying target subjects; identifying specific, significant sources of supply; advancing the financial investigation into money laundering; and locating stash houses. The agent informed the issuing judge of the normal investigative techniques that have been used during the last period of interception, including administrative subpoenas, confidential sources, toll analysis, telephone records, cellular telephone tracking, and physical surveillance of locations on the United States. The agent states:

> [W]e have been unable to determine the precise nature of the relationships among the TARGET SUBJECTS. The interceptions requested offer the most promising method to fully understand the criminal relationships and criminal conduct of the TARGET SUBJECTS and others. Specifically, while we know . . . uses . . , to distribute methamphetamine in the United States, we have not been able to identify their respective distribution networks. We also have not been able to establish the contours of the relationship between . . . and . . . .

(Exhibit A at 18).

In the July 7, 2011 affidavit the affiant identifies the Defendant Cota as a target subject based upon interceptions of criminal communications involving Cota on GARCIA TT#14 and

seeks to intercept calls on COTA TT#17. The agent explains that they learned from the last 30 days of interceptions over GARCIA TT#14 that Garcia works under Peterson to facilitate the distribution of methamphetamine to others, including Defendant Cota. The agent informed the judge:

> During the last period of interceptions we also identified COTA, a downstream distributor who receives methamphetamine from ANGEL through PETERSON and GARCIA. COTA, in turn, appears to have his own significant distribution network. For example, we learned that COTA has distributed marijuana, and pound-quantities of methamphetamine to . . . , one of the principal target subjects of a completely separate investigation.

(ECF No. 498, Exhibit B at 9). The agent stated: "Even with an extensive use of traditional investigative techniques in conjunction with prior interceptions, we have yet to identify significant participants in the criminal activity. . . or a single location being used to store methamphetamine for more than very brief periods of time." *Id.* at 10.

The agent details extensive facts which establish probable cause to believe that one of more of the target subjects have committed, are committing and will continue to commit criminal activity. *Id.* at 10-18. The agent details the use or considered use of normal investigative procedures and the limitation of each procedure in advancing the goals of the investigation, including confidential sources, undercover agents, physical and video surveillance, interviews, subpoenas and court orders, financial investigation, search warrants and searches, trash searches, telephone toll analysis, tracking devices, mail covers, and other wiretaps. *Id.* at 21-31. The agent explains that the investigation has used confidential informants who can not provide additional information and "remain unwilling to testify in court proceedings . . . out of concern for their own safety." *Id.* at 22. The agent states that undercover agents have no introduction and would be placed in serious jeopardy. The agent details surveillance operations on four occasions in June 2011 and informed the judge that physical surveillance without the aid of wiretaps has not been able to reveal the nature of what transpired at meetings between target subjects. The agent explains that "searches and search warrants have been utilized whenever this investigative technique could be employed without jeopardizing the investigation." *Id.* at 27. The agent provides details regarding a consent search and a border search of target subjects during the month of June and discusses

"conducting a fourth-waiver search of the PETERSON FAMILY RESIDENCE based upon GARCIA's suspected residence there and PETERSON's probation status." *Id*. at 28. The agent concluded that probation searches and trash searches are likely to have a chilling effect on the main targets, and that the opportunities for pretext searches are limited. *Id*.

Based upon the facts set forth in the affidavits, the issuing judge reasonably concluded that the affiant made a showing that "ordinary investigative procedures, employed in good faith, would likely be ineffective in the particular case." *United States v. McGuire*, 307 F.3d 1192, 1196 (9th Cir. 2002). The affiant in this case did not rely upon conclusory statements and provides specific probative facts.[1] The affiant detailed various investigative methods utilized in the investigation and explained the necessity to intercept wire communications in order to identify the source of narcotic suppliers and the sub-distributors and the location of the narcotics storage. The affiant provided detailed information regarding fourth amendment waiver searches of subjects associated with Defendant Cota and informed the issuing judge of reasons why fourth amendment waiver searches would not be effective in accomplishing the goals of the investigation. "[T]he necessity requirement is ... to be interpreted in a practical and commonsense fashion and need not therefore be used as a last resort." *United States v. Bailey*, 607 F.2d 237, 241 (9th Cir. 1979); *see also, United States v. Bennett*, 219 F.3d, 1117, 1121 (9th Cir. 2000) (wiretap applications established necessity where law enforcement was "unable ... to obtain information about the extended organization, such as other members, couriers, buyers, and suppliers."); *United States v. Torres*, 908 F.2d 1471, 1422 (9th Cir. 1990) ("[T]he government need not exhaust every conceivable investigative technique in order to show necessity."). The Court concludes that the affidavits in support of the applications at issue provided "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous" in compliance with 18 U.S.C. § 2518(1)(c).

**2. Minimization**

Section 2518(5) requires that the Government conduct wire intercepts so as to

---

[1] There are no facts stated by the affiant which would require a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978).

"minimize the interception of communications not otherwise subject to interception." 18 U.S.C. § 2518(5). The Government has the burden to show minimization. *Torres,* 908 F.2d at 1423. In *Torres*, the Court of Appeals explained:

> Minimization requires that the government adopt reasonable measures to reduce the interception of conversations unrelated to the criminal activity under investigation to a practical minimum while permitting the government to pursue legitimate investigation. The standard for minimization is reasonableness.

*Id.* (citations omitted). "The mere interception of calls unrelated to the drug conspiracy does not indicate a failure to meet the minimization requirement." *Id.*

In this case, the affidavits in support of the application for interception of wire communications set forth the procedures for minimization. *See* Exhibit A at 31, Exhibit B at 34. Defendant provides no calls which Defendant assert should have been minimized and no suggestion that any minimization procedure was inadequate. The record demonstrates that the minimization efforts were reasonable and in accordance with 18 U.S.C. § 2518(5).

## CONCLUSION

IT IS HEREBY ORDERED that the motion to suppress wiretap evidence, or in the alternative, to request an evidentiary hearing filed by the Defendant Robert Cota, Jr. (ECF No. 290) is denied.

DATED: October 9, 2012

**WILLIAM Q. HAYES**
United States District Judge